IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ZINSKY and<br>SCOTT CASE,<br><br>  Plaintiffs,<br><br>  v.<br><br>MEDLINE INDUSTRIES, INC.<br><br>  Defendant. | )<br>)<br>)<br>)  CASE NO. 21-CV-4932<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, AUTHORIZATION TO DISTRIBUTE
<u>SETTLEMENT FUNDS, AND AWARD OF ATTORNEYS' FEES</u>**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Michael Zinsky and Scott Case submit this memorandum in support of their motion for final approval of the proposed class-action settlement reached in this matter, which settlement is attached hereto as Exhibit 1.

**I. BACKGROUND.**

 **A. Procedural Background.**

On September 16, 2021, the Named Plaintiffs filed this lawsuit, on behalf of themselves and others similarly situated, alleging that Defendant failed to pay them at the correct regular rate in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a. More specifically, Plaintiffs alleged that Defendant failed to include non-discretionary production or performance bonuses in the employees' overtime rate of pay, which resulted in Plaintiffs being paid less than one-and-a-half times their regular rate of pay for hours worked in excess of forty hours in a workweek. *See* Dkt. No. 1.

In March 2022, in an effort to resolve Plaintiffs' claims, Defendant provided Class Counsel

with electronic payroll data for all class members. *See* Exhibit 2 (Wilmes Declaration) ¶ 3. Using that data, Class counsel calculated that Defendant excluded approximately $40,000 in overtime pay from Class Members' regular rate of pay between September 16, 2018 and March 1, 2020. *Id*. ¶ 5. After applying monthly penalties under the IMWL and liquidated damages under the FLSA, Class Counsel believes that Class Members are owed over $130,000. *Id*

On May 23, 2022, the parties agreed at a court-supervised settlement conference to settle the case for a settlement payment of $137,000, plus costs of settlement administration. *See* Ex. 1. The parties finally executed the written Settlement Agreement on August 8, 2022. The Settlement Agreement is not an admission of wrongdoing or liability by Defendant.

### B. The Terms Of The Parties' Agreement.

The Settlement contemplates that the Court will certify the following Settlement Class:

> All individuals who worked at Defendant's Dynacor facility in Mundelein, Illinois and who received a "Bonus" or "Warehouse Bonus" payment in at least one workweek during which they worked over 40 hours between September 16, 2018 and March 1, 2020 (collectively, the "Class," and each member thereof, "Class Member"). The Class shall include the Class Representatives and all Opt-in Plaintiffs (defined herein).

Ex. 1, § II.

The parties' Settlement Agreement creates a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-1, et seq., to which Defendant will pay the total settlement amount and the employer-portion share of payroll taxes one week before the Final Approval Hearing. Out of the total settlement amount, $88,000 is allocated to compensate Plaintiffs and Class Members for their FLSA and IMWL claims. *Id*. The remainder of the total settlement amount is allocated to incentive awards of $4,000 ($2,000 per named Plaintiff) and attorneys' fees and litigation expenses for Class Counsel of no more than $45,000. *Id.* § IV.7.

The entire $88,000 allocated to Class Members will be paid to Class Members who do not opt-out of the Settlement, and none of that money will revert to Defendant. *Id.* § IV.5, 11 & 12. Class Members do not have to return a claim form to obtain a settlement payment. If any settlement checks remain uncashed after 90 days, those amounts will be distributed to the other Class Members who cashed their initial checks. Any amount that remains uncashed after an additional 90 days will be donated to the Chicago non-profit organization, Legal Aid Chicago. *Id*. § IV.5 & 12.

Except for those Class Members who timely and properly exclude themselves, as set forth in the Class Notice (attached as Exhibit A to the Settlement Agreement), all Class Members will be bound by the final approval order, the judgment, and the release set forth in the Settlement Agreement. *See id.* Such Class Members will grant Defendant a release as specified in Section IV.4.A. of the Settlement Agreement. *Id*.

## II.     Preliminary Approval and Notice.

On August 1, 2022, the Court preliminarily approved the parties' Settlement Agreement and ordered notice to be issued to the class. Dkt No. 42. On August 26, 2022, the Settlement Administrator, Simpluris, Inc. ("Simpluris"), mailed the approved notice to all Class Members. Exhibit 3 (Simpluris Decl.), ¶8. If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, then Simpluris performed an advanced address search (i.e. skip trace) on that address. *Id*. ¶9. To date, no addresses have been deemed undeliverable. *Id.* ¶ No Class Members have objected and one Class Member has opted out. *Id.* ¶10. If any Class Member submits an objection or valid opt out before the final approval hearing, counsel will inform the Court accordingly.

3

**III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

   **A.   Legal Standard.**

The standard against which a proposed class settlement should be evaluated is whether the settlement taken as a whole is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The determination whether to grant approval of a class action settlement is within the sound discretion of the Court. *See id*. at 1196-97 (applying abuse of discretion standard to review of district court's approval of class action settlement).

Federal courts "naturally favor the settlement of class action litigation." *Id.* at 1196. *See also Uhl v. Thoroughbred Tech. & Telecomm., Inc.,* 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate."). "[C]ourts look upon the settlement of lawsuits with favor because it promotes the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) (internal citations omitted).

Courts within the Seventh Circuit evaluate five factors when determining whether a class action settlement meets the standard of being fair, reasonable, and adequate. The relevant factors include: (1) the strength of plaintiff's case compared to the amount of defendant's settlement offer, (2) an assessment of the likely complexity, length, and expense of the litigation, (3) an evaluation of the amount of opposition to settlement among affected parties, (4) the opinion of competent counsel, and (5) the stage of the proceedings and the amount of discovery completed at the time

of settlement. *See Isby*, 75 F.3d at 1198-99. All of the above factors weigh in favor of final approval of the settlement in this case.

      **B.    Application of the Seventh Circuit's Factors Strongly Supports Final Approval of the Settlement Agreement.**

            **1.    Plaintiffs' case on the merits, balanced against Defendant's settlement offer.**

The FLSA requires an employer to pay an employee one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C. § 207. In the case of a willful violation, the employer must pay two times the amount of wages owed. 29 U.S.C. § 216. In addition, an aggrieved plaintiff is entitled to recover his or her attorneys' fees and costs. *Id.* The IMWL also requires an employer to pay an employee one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. 820 ILCS 105/4a. As a penalty, the IMWL provides that an employer must pay three times the amount of outstanding overtime wages for the period after February 2019 when the penalty provisions to the IMWL were enacted, plus five percent of the outstanding overtime wages for each month that the wages are overdue. 820 ILCS 105/12(a). It also allows a prevailing plaintiff to recover attorneys' fees and costs. *Id.*[1]

In this case, Plaintiffs allege that Defendant failed to include non-discretionary production or performance bonuses in the employees' overtime rate of pay, which resulted in Plaintiffs being paid less than one-and-a-half times their regular rate of pay for hours worked in excess of forty hours in a workweek. *See* Dkt. No. 1. Plaintiffs maintain that the out-of-pocket losses stemming from these alleged violations, between September 16, 2018 and March 1, 2020, is approximately $40,000. Ex. 2, ¶ 5. The Settlement provides that Class Members will be paid in full for that amount

---

      [1] Prior to 2019, under the IMWL, employers were required to pay the amount of outstanding wages, plus two percent of the outstanding wages for each month the wages are overdue. *See* 2019 Ill. Legis. Serv. P.A. 101-1 (S.B. 1).

plus an additional amount for statutory penalties and liquidated damages.

        **2.      The likely complexity, length, and expense of further litigation and the public interest.**

This litigation is not particularly complex, as far as class actions go, but unless the Settlement Agreement is approved, the duration of the litigation could span years and would include briefing on class certification, depositions, trial, and appeals. Defendant is represented by capable counsel and has demonstrated a commitment to defend this case through and beyond trial, if necessary. A recovery for the class as the result of a favorable judgment, if obtained, would occur only after hard fought and costly discovery, a trial, post-trial motions, and lengthy appeals. There is no question that this settlement produces a recovery at far less expense, much sooner and, most significantly, with more certainty than if the parties were to litigate the matter to its conclusion.

The settlement also advances the interests of judicial economy and avoids the substantial time and expense that would be necessary to litigate this case and is, therefore, in the public interest. *See American Civil Liberties Union of Ill. v. U.S. Gen. Serv. Admin.*, 235 F. Supp. 2d 816, 819-820 (N.D. Ill. 2002) (citing *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 888-89 (7th Cir. 1985)) ("the settlement furthers the public interest by avoiding costly, unnecessary and uncertain litigation in favor of a mutually beneficial resolution of class-action lawsuits"). In particular, given the relatively small amount of alleged unpaid wages at issue in this case, it is clearly in the best interest of the parties to resolve this issue without further, protracted litigation.

        **3.      The amount of opposition to the settlement and the reactions of members of the class to the settlement.**

The settlement enjoys the support of the Class Members. So far, no Class Member has objected, and one Class Member has opted out. Ex. 3 ¶10. It is unusual not to encounter some objections or requests for exclusion to proposed class action settlements. *See, e.g., Uhl*, 309 F.3d

at 987-88 (holding that district court did not abuse its discretion when it approved settlement on behalf of a class from which 250 of the 58,000 class members opted out); *Hiram Walker & Sons*, 768 F.2d at 892 (stating that "without more, a large number of objectors will not result in the reversal of a district court's approval of a consent decree"). Here, the lack of objectors reflects the fairness and reasonableness of settlement.

### 4. The opinion of competent counsel.

Class Counsel are experienced and accomplished class action litigators. *See* Ex. 2, ¶9. In the considered opinion of lead counsel, the settlement achieves a more than favorable result for the Class Members under the circumstances. *See id.* ¶6. Class Counsel's recommendation, while not conclusive, should be given a presumption of reasonableness and is entitled to significant weight. *See Hispanics United*, 988 F. Supp. at 1170 (internal citations omitted).

### 5. The stage of the proceedings and the amount of discovery completed.

As discussed above, this case settled at a relatively early stage, but only after Defendant produced all relevant payroll records, which Class Counsel spent numerous hours reviewing and analyzing. As a result of the exchange of this discovery and good-faith negotiations, counsel are aware of the strengths and weaknesses of their claims and are therefore well-prepared to reliably gauge the reasonableness of the settlement.

### IV. THE NOTICE PROVIDED TO THE CLASS SATISFIES RULE 23(e) AND DUE PROCESS.

The manner and form of notice provided to the Settlement Class is fully compliant with the requirements of Rule 23(e)(1) and due process.

Pursuant to this Court's Preliminary Approval Order, the Settlement Administrator, on August 26, 2022, mailed the Notice of Proposed Class Action Settlement (the "Class Notice") to all Class Members via first class mail. Ex. 3 ¶8. When a notice was returned, the Settlement

Administrator forwarded the notice if a forwarding address was provided by the U.S. Postal Service. *Id*. ¶8. Where no forwarding address was available, the Settlement Administrator attempted to find alternative address information through skip tracing. *Id*. ¶9. To date, no Class Notice packets have been deemed undeliverable by the Settlement Administrator. *Id.* ¶9.

Rule 23(e) and the Due Process Clause require that notice be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." 4 Newberg on Class Actions § 11:53 (4th ed. 2010). That standard has been more than satisfied here.

V.  **THE REQUIREMENTS OF RULE 23(a) and 23(b)(3) HAVE BEEN SATISFIED.**

Settlement classes "afford[] considerable economies to both the litigants and the judiciary and [are] also fully consistent with the flexibility integral to Rule 23," *In re General Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), and have become "a stock device" for resolving major multi-plaintiff litigation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The proposed Settlement Class – defined below – fully satisfies the criteria set forth in Rules 23(a) and 23(b)(3):

> All individuals who worked at Defendant's Dynacor facility in Mundelein, Illinois and who received a "Bonus" or "Warehouse Bonus" payment in at least one workweek during which they worked over 40 hours between September 16, 2018 and March 1, 2020 (collectively, the "Class," and each member thereof, "Class Member"). The Class shall include the Class Representatives and all Opt-in Plaintiffs (defined herein).

A.  **The Requirements of Rule 23(a) Are Satisfied.**

The proposed class in this case satisfies each of the four "class-qualifying criteria," *Amchem*, 521 U.S. at 621, specified in Rule 23(a).

Numerosity is satisfied because there are 115 class members.

Commonality is likewise satisfied. The common issue of law and fact in this case is whether Defendant was required to include non-discretionary production or performance bonuses in the Class Members' overtime rate of pay.

The typicality criterion is also satisfied. The claims of the Named Plaintiffs and the claims of absent Class Members all "arise from the same practice or course of conduct . . . and . . . are based on the same legal theory," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), namely that Defendant failed to include all remuneration paid to Plaintiffs and Class Members when calculating their overtime pay.

Finally, the requirement of "adequacy" is satisfied: there are no disabling conflicts between the Named Plaintiffs and the class, there are no issues of allocation between present and "future" claimants, and Plaintiffs' attorneys are experienced and accomplished in class litigation.

B. **The Requirements of Rule 23(b)(3) Are Satisfied.**

Rule 23(b)(3) requires both "predominance" and "superiority." Both are satisfied here. The Class Members have alleged the same claims under both the FLSA and IMWL, and thus the pertinent facts and questions of law will be the same for all. The individual prosecutions of claims by more than two-thousand Class Members would not be feasible given the relatively small size of most Class Members' individual damages claims, which average less than $1,000 per Class Member. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").[2]

---

[2] Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## C. The Requirements of 29 U.S.C. § 216(b) Are Satisfied.

Finally, the Class Members' claims can be certified under the FLSA because all such Class Members are similarly situated. 29 U.S.C. § 216(b). To determine whether Class Members are similarly situated, the Court must consider: "(1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *See Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008).

Here, all Class Members are non-exempt employees who worked in Defendant's Dynacor facility in Mundelein, Illinois and were allegedly not paid the correct overtime rate for all hours worked in excess of forty in a workweek between September 16, 2018 and March 1, 2020. Plaintiffs contend that Defendant consistently failed to include certain payments in the Class Members' regular rate of pay, thus rendering Class Members similarly situated and undercutting any individualized defenses. Additionally, "fairness and procedural considerations, including the number of plaintiffs in this case and the effectiveness of allowing them to pool their resources for litigation . . . weigh in favor of collective treatment." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010). For these reasons, certification of the Class under 29 U.S.C. § 216(b) is appropriate.

## VI. THE AGREED UPON ATTORNEYS' FEES ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL.

Under the Settlement Agreement, and subject to the Court's approval, Class Counsel will be paid $45,000 to reimburse their litigation costs and as attorneys' fees. Ex. 1, § IV.7. Plaintiffs' request, which is 33% of the amount created by the negotiated settlement (net of administration costs), equals the market rate of Plaintiffs' attorneys' services, had their fee been negotiated with the purported class at the outset of the litigation. See *Birchmeier v. Caribbean Cruise Line, Inc.*,

10

896 F.3d 792, 796–97 (7th Cir. 2018) ("When awarding fees to class counsel, district courts must approximate the fees that the lawyers and their clients would have agreed to at the outset of the litigation given the suit's risks, competitive rates in the market, and related considerations."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (standard "benchmark" of 25% of common fund, paid from the fund, is fair and reasonable); *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *Buckholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (holding that one-third of a common fund constitutes a reasonable attorneys' fee); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 CV 8713, 2010 WL 2399328, *7 (S.D.N.Y. March 3, 2010) (same); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 97 C 7694, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001) (same).

Before this lawsuit was filed, the Named Plaintiffs agreed to pay Class Counsel no less than 33% of any recovery. Ex. 2, ¶9. This is strong evidence that the requested fee award of $45,000 mirrors the market rate for Class Counsel's services.

### VII. THE PROPOSED INCENTIVE AWARDS ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL.

Under the Settlement Agreement, subject to Court approval, Mr. Zinsky and Mr. Case each will receive a modest $2,000 incentive award payable from the Settlement Fund. Plaintiffs provided valuable assistance to Class Counsel. They responded to numerous inquiries from Class Counsel regarding Defendant's overtime pay policies and stepped forward despite the risk of being held liable for Defendant's costs under Rule 54(d). The proposed incentive award is reasonable, particularly when compared to awards approved in other class action settlements. *In re U.S.*

11

*Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving total incentive payments that did not exceed .35% of the total settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 to each of the two class representatives in a 5,400 person class in a settlement of $1.725 million); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive payment that did not exceed .17% of total settlement).

## CONCLUSION

For all the reasons stated above, Plaintiffs requests that the Court enter an Order substantially similar to the one attached hereto as Exhibit 4:

1. Granting final approval to the class-wide Settlement Agreement negotiated by the parties as fair, reasonable, and adequate;

2. Approving payment to Class Counsel in the amount of $45,000.00 in attorneys' fees, costs, and litigation expenses as fair and reasonable;

3. Instructing Medline to pay Simpluris for the reasonable costs of settlement administration.

4. Approving $2,000 incentive awards to each of the two Named Plaintiffs.

5. Ordering the Settlement Administrator to issue settlement checks to each Class Member as outlined in the Settlement Agreement.

6. Dismissing this case with prejudice as to all Class Members and ordering that all Class Members release and forever discharge Defendant and the other Released Parties from claims outlined and described in Section IV.4.A of the Settlement Agreement.

DATED: October 31, 2022

                                                   Respectfully submitted,

                                                   /s/Christopher J. Wilmes
                                                 One of the Attorneys for the Plaintiffs

Christopher J. Wilmes
Tory Tilton
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
312-604-2636